Good morning. May it please the Court, Mr. Chief Judge, Judge Rosenbaum, and Judge Dubina. I will try to be shorter than the seven minutes. In the request for oral argument, we indicated that everything had been briefed in the briefs. The reason we thought there should be oral argument was what we viewed as being the rather peculiar application of a litigation privilege that had been adopted by Chief Judge Moore as well as the sanctions issue. I will address those things briefly, and then unless the Court has any other questions, I'll retain whatever time I have for rebuttal. Chief Judge Moore basically ruled that an order that had been entered by now-retired Judge Alan Gold, which had expired and which had been requested to be renewed and which Judge Gold had refused to be renewed and was used by counsel for the other side to go into a grand Caymans and also in the Dominican Republic and seek both early injunctive relief and permanent injunctive relief was a proper, since there was a lawsuit involved, that that was a proper application of the litigation privilege and that the litigation privilege barred our being able to sue for the various claims we had. There is no basis, this of course is a diversity case, there is no basis in Florida law for such a ruling and there's no other basis for it at all and that is the reason why we cited the cases on the point. Let me ask you this. Yes, sir. Any decision from any Florida court that excludes foreign judicial proceedings from the definition of judicial proceedings? No, sir. Nothing I'm aware of. Why shouldn't we say that a foreign judicial proceeding is something that the  Because, Your Honor, you can't take an expired case and put it back in the expired court order from a court in the United States and go into another court and say that that order is in full force and effect and bars any kind of action in those foreign courts. Well, you're just repeating your conclusion in your position, counsel. Pardon me, sir? You're just repeating your conclusion in your position. You're not telling us why. Oh, I'm sorry because particularly among other reasons, the timing. The fact of the matter is that the order had expired and these cases had nothing to do with what was going on in Miami and in addition to that. Well, I thought the question was whether the litigation privilege applied if it applies by its own terms to a foreign proceeding, not whether the litigation proceeding privilege should apply in this case assuming this, we didn't have the complication of a foreign proceeding. I apologize. I thought I answered Judge Dubina and said that I did not know any reason why it would not apply to a foreign judicial proceeding. Okay. It's not clear. I apologize. I thought I answered it. Okay. So you're not arguing it's inapplicable because this is a foreign proceeding? That's correct, Your Honor. Let me ask. I'm sorry. Go ahead, Chief. No, I was just saying I misunderstood the argument at brief. I'm sorry. Go ahead. So did I. Let me ask you something because I actually did have some concerns about applying the litigation privilege in foreign proceedings. It seems to me like from Latam and Wolf that the concerns that the Florida courts had and the reasons why it allowed the litigation privilege to be used in certain areas but they were concerned about making sure that the proceedings would be full due process, there would be adversarial type proceedings, that the lawyers would be under the control and subject to the control of the court saying that there were adequate substitutes for the abuse of process, cause of action because the court could sanction the attorneys or take other kinds of corrective action. And my concern is that in foreign jurisdictions, that's not always the case. And so I wonder, first of all, whether that's something we need to be concerned about because it seems to me like that drives the analysis that the Florida courts have. And second of all, if it is something we need to be concerned about, the basis that is, well, this case is in the Turks and Caicos, so we have to look at whether the Turks and Caicos judicial system has sufficient guarantees and whether the Turks and Caicos judicial system adequately controls the lawyers who appear before it. But this other case is before the Dominican Republic, so now we have to consider the Dominican Republic's particular legal system or do we just have some kind of blanket rule that we are or are not going to recognize litigation privilege in foreign jurisdictions? Your Honor, the question asked by Judge Dubita was whether there was any Florida case which said that it did not apply to a foreign proceeding. That was the question I answered. The statement that you just made, the question you just made, obviously makes a great deal of sense. But more importantly, even if it was not in a foreign jurisdiction, the fact that it is in a foreign jurisdiction is even more outrageous. That lawyers would go into a foreign jurisdiction and hold up an order that had expired and claim that that order prevented action from going forward in that court and in effect have the end effect of destroying $160 million worth of equity, which is referred to by the Dominican Republic. Mr. Clark, we are trying to get you to state your position on whether or not Florida's litigation privilege applies to proceedings in foreign courts. And you keep wanting to talk about how outrageous it would be to apply the litigation privilege if this were a domestic court, for example. If you don't want to answer the question, just tell us that and we will leave you alone on it and do the best we can with it. But you haven't yet addressed whether or not the Florida law litigation privilege should apply when the proceedings complained about or the matters complained about occurred during or arose from a foreign litigation. Judge, there are no cases that have addressed that issue, which I thought I answered. If you are asking whether or not there are policy reasons why that should be adopted as a rule in Florida, I would suggest it is for exactly the reasons raised in Judge Rosenbaum's question, because none of those protections are there. But even if it was a Florida case that we were talking about, the litigation privilege would not apply as the Florida cases indicate. Anything further, Chief? No. Thank you, Counsel. My time. Thank you, Judge. We rely on the briefs for the other points. Please, the Court. Judge Rosenbaum, Chief Judge Karnes, and Judge Davina, I guess I'll just respond to your question, Judge Rosenbaum, and Chief Judge Karnes' inquiries. With respect to the application of the litigation privilege in foreign jurisdictions, the way the analysis starts in my mind, from my experience in the cases, is that you determine whether it is a judicial proceeding. So that if there is a judicial proceeding, action is taken in that judicial proceeding, and it's related to that judicial proceeding. The policies that have been expressed by the Florida Supreme Court repeatedly say that to protect the litigants' ability to speak freely and to defend and prosecute their cases, the litigation privilege will apply. So first, is it a judicial proceeding? The appellant below did not raise ever the issue that, for some reason, the Dominican Republic and or the Turks and Caicos proceedings were not judicial proceedings. In fact, they conceded that they were judicial proceedings. And I don't think they've argued in their those courts were not judicial proceedings. Now, I don't know if you want to dwell on it, but the fact of the matter is, with respect to the Turks and Caicos, my client, clients, Hilda Peloto and Arnstein and Lear did not sign an affidavit talking about the TRO issued by Judge Gold. And in fact, the TR issued by Judge Gold was still in effect when the Turks and Caicos injunction was entered. Judge Rosenbaum, your concerns about, well, what about the protections of due process and so forth that may happen in these foreign courts? Will they really have control of litigation? Will there be protections to litigants down there that should be recognized here in the United States and in Florida? And in this case, I think is a good example, even though they didn't raise this issue, in the Turks and Caicos, that court dissolved the injunction once that court learned that the Gold injunction had expired and for various other reasons, which are in the record. So that actually comes to the second half of my question, which is, if we, and I appreciate your emphasis on this being a judicial proceeding. But the case law in Florida, and what we're trying to do is figure out how Florida would decide this, right? We're not looking at, we're not deciding this based on our own experience, but Florida has said that an administrative proceeding is like a judicial proceeding. It has the same protections. The attorneys are subject to discipline by the presiding administrative officer, et cetera. But a pre-indictment type of deposition is not. And so it's got a more qualified version of the litigation privilege. So my, so it seems to me that it's not so much a focus on whether it's a judicial proceeding or not a judicial proceeding, but whether it has the protections that we, that the state of Florida is valuing in a judicial proceeding. Yes. So if one of the things that we're looking at is, you know, is this an adversarial process where the types of protections, et cetera, do we need to do that on a country by country basis? And it just depends on where the litigation is raised. Or do we just say, you know what, that's going to require an awful lot of work on the part of the courts to learn the foreign law for, and process for all these different countries. So instead, we're just going to say it doesn't apply. And I wonder what your take is on that. I understand that it must be, if that's what's going to happen in the analysis here. I would think that the courts of Florida, which are concerned with protecting a litigant's rights and making sure, and pointing out that there are remedies in the event that litigants misbehave. And those remedies include 57-105 motion, contempt, control by the court. That's what I think the courts would look at is, in these other jurisdictions, is that happening? Would that happen? And in this case, it did. But do you have to, so how do you demonstrate that? Do you demonstrate that by looking at what actually happened in the case? Do you have to have an expert come in and explain how the process works? What if there's a debate over how much protection there is? How does that work? If you go down that road, that it would be like any other case where the foreign law is going to apply in the proceeding. You'd have an expert come in and testify as to what the foreign law is, and you'd probably have an opposing expert saying, this is what the foreign law is not. And if you were going on a case-by-case analysis, if a defendant, which didn't happen here, if a defendant raised the issue of, this is not a real court, you should not respect this court, just like you, I guess it would be the same analysis as if, should we respect the judgment of a foreign court? And courts will look at what happened in that foreign court. It should be the burden, I would believe, and I think the court would find, the Supreme Court of Florida, if it was asked, would find that it would be the defendant's burden to show that this was not a judicial proceeding, that there were not the protections, and that for that reason, we should not protect the litigants from what happened down there. Let me ask you this, Mr. Kellogg, and I want you to be careful when you answer. I assume the foreign jurisdiction aspect of the litigation privilege was at issue here, but did the plaintiff argue in the district court that the litigation privilege did not apply in this case because it was a foreign litigation as opposed to a domestic litigation out of which this dispute arose? My understanding, and the argument changed over time, and the argument that was advanced, I believe, at the Rule 11 hearing before the magistrate on sanctions by Mr. Klock was that any foreign court, whether it be across border or across state lines, the litigation privilege does not apply. So he was not saying because this is a foreign court without any due process. No, no. I'm asking you whether he applied. He didn't sound to me like this morning he is arguing that the litigation privilege doesn't apply because it arose out of foreign litigation, but you're telling me he did raise that issue in the district court? He did raise the issue that unless, in fact, he said, he argued that only Judge Gold is the only court in which the litigation privilege could apply. And if there was, for example, in a Florida state court in Miami, would not apply the litigation privilege to a court in Broward County or in Fort Lauderdale or in Orlando. It was broader than that. He did say that litigation privilege should not apply outside the context of the Judge Gold case. And that would, in my mind, include foreign jurisdictions. But he never argued that the reason for not applying litigation privilege in the foreign jurisdictions is because there are no procedural due process protections there. He never raised that. I'm not sure he has to specify the reasons if he preserves the issue. Of course, he also has to press it in his brief before our court. We'll take a closer look at that. I just assumed it was in the case. But from the oral argument this morning, I'm not sure that question is in the case. And one thing I am relatively sure about, because we've looked hard, is that there's no Florida decision on point resolving the issue one way or the other. That is correct. I have not found one. Should we certify that question? Well, that's of course within Your Honor's discretion to certify that question to the Florida Supreme Court if you desire. It would seem to me in the context of this case, where you have so much to say, there's a lot more to say. Well, except that the problem there is that consent occurred after some of the damages had already occurred. And the other problem with that is that as a result of the previously occurring damages, it didn't matter that they consented to the monitor because they still couldn't get any deals. The damage was already done, in other words. So I think that's kind of a problem for your client. Of course, if you accept the pleading that they have done. But the attachments to the pleading show that every one of the supposed lost sales that they complain about happened after the monitor was appointed and they had the ability to lift the injunction through the monitor if they had wanted to or if they had tried to. Now, I understand he has alleged that there were damages caused earlier because the publicity and so forth of these injunctions made it difficult for them to negotiate. I understand that. They couldn't get any bank to give them any money as a result of all of the things that had already happened. But also, I think in the context of, and your question, Judge Davino, was should you certify this question, you have a situation here where you have a criminal referral, an SEC permanent bar. Is this the case that you want to try to make this law on? That alone, to me, certainly a case for malicious prosecution here was unwarranted in view of the fact of what former U.S. Attorney and Federal judges making criminal referrals and finding that this was a Ponzi scheme and that the allegations of my client's complaint were essentially true. Well, sort of. I mean, it seemed to me that the magistrate judge also suggested that Mr. Catledge was involved in the scheme. And whether or not Mr. Catledge was involved, Mr. Catledge was not my client's client. And whether or not Mr. Catledge should have been a defendant doesn't bear on the issue of whether Mr. Elliott and his company should be defendants. They were the ones operating, and as Judge Scott found in his report, the fraud here was two levels. One was the raising of money through securities fraud, and the other was mismanagement and theft of funds done by the Elliotts only. In, I think it was Aguilar, wasn't . . . was that the lawsuit was on behalf of the agents of Impact, which was Mr. Catledge's firm. So, I mean . . . Let me explain that. That was the Diaz firm filed that lawsuit. And you look at, I think it's Exhibit K to the complaint in this case, it's a letter that explains the Aguilar action. And in that letter, the sales agents were also investors. In order to sell, you had to buy. So, they were . . . these agents were complaining that Mr. Elliott had stolen from the project, that they were themselves investors as well as salespeople. It's truly a pyramid scheme that was going on here. So, it's not like the salespeople just came in and sued because they wanted to get out of their liability for selling, putting aside Mr. Catledge. But the question is, was it without a factual basis or filed in bad faith, right? Was the Aguilar complaint filed in bad faith or without . . . No, no. The complaint in this case. Yes. You're moving now to the Rule 11, yes. In terms of . . . and Judge Moore did not rule on the basis of malicious prosecution and lack of . . . the probable cause here was apparent to everyone for filing the case . . . my clients filing the case and even the Aguilar clients filing the case against the Elliotts for their theft from the project. Judge Moore ruled on the fact that one of the defendants, one of the plaintiffs in this case wasn't even a defendant below and so there was no malicious prosecution. I agree with you on that. I mean, the Juan D'Olio defendants. Exactly. And then the other basis was that he found that the Elliotts had consented to the regime that they say caused their damages. That had been appealed to this court and affirmed. And for those two bases he thought were objectively frivolous and the amount of fees he awarded were, you know, much less than what we were asking for. It was a reasoned sanction. If there are not any other questions, I'll sit down. Chief, do you have anything? No, I don't. Thank you. Counsel's recitation of facts comes from a lot of places, but not the complaint, which is what we're dealing with. I think there's a couple of points here. I don't want to fuss with the chief judge about this, but the fact of the matter is that under Florida law, I do not believe that the litigation privilege would apply to this situation, even if it was another case in Florida. Counsel, you understand I'm not fussing with you about that. First of all, I try not to fuss with lawyers, period. But all I was trying to get you to do was answer the question of whether litigation privilege ever applies at all to matters arising from foreign litigation. Because if it does, your argument that it wouldn't apply to this situation if it weren't a foreign jurisdiction, I mean a foreign litigation matter, would be moot. We wouldn't have to address that. And also whether it applies to a foreign jurisdiction matter is arguably, and I think self-apparently, more important in the broader sense than whether it applies under this particular set of facts. Not more important to the resolution of this case, but more important if we publish an opinion to what we decide. And for that reason, we were trying to get some help from you on that broader issue in case we decide to decide the case on it. Or at least we decided on the way to deciding the application of law to facts issue. That's why we were asking about that. You've made it relatively clear that you don't have any desire or ability to assist us any further in that. I'm not saying that critically. You've said all you want to say on that. I'm not going to ask you any more questions about it. We'll do the best we can. Judge, I started out by answering Judge Dubina's question. I am not in any way, shape, form or fashion criticizing you for doing that. But that's not the only question that we had. So if the second question is, should it apply to foreign jurisdictions, I think there are problems that have been unearthed and articulated by Judge Rosenbaum that make it clear there are problematic ones, particularly in this case. I mean, you take a canceled injunction, you go to a Dominican court, you get them to enter an injunction which in effect destroys property values and they say, well, you know, I mean, you know, it's protected by the litigation privilege. There's no policy reasons to do that. And the cases in Florida definitely go down a different chain. And if there is an issue as to whether or not Florida wants to extend the litigation privilege to what I consider to be appalling circumstances, that should be decided by the Supreme Court. I think Judge Dubina is right about that. Refer to the Supreme Court of Florida, see what they think. But the suggestion that the existing body of law in Florida is intended to protect this kind of conduct and then to talk about his client as being separated from Diaz when they're brought in together, when the allegations of the complaint are they plotted together, where the allegations of the complaint are that basically they set up this scheme so that one of them could claim to be a victim and Mr. Catledge, who, he makes a big point about a criminal referral, which is of course not in the complaint as far as Mr. Elliott's concerned. Well, Mr. Catledge is currently being That is simply not worthy of the court addressing. What's worthy of the court addressing is whether or not the court wants to stand behind the premise that the litigation privilege should be extended in this fashion. And it would be an extension because it is not articulated as far as Florida cases are concerned. And the allegations of the complaint are pretty dreadful in my opinion. And then the sanctions point, the fact of the matter is that I think as Judge Rosenbaum would recognize, you can sue someone for malicious prosecution even if they're not a party, if they were part of, if they were injured as a result of it. And then the other thing that fascinates me is the suggestion that this is some sort of Ponzi scheme or pyramid scheme. It's a great pyramid scheme. Take $160 million and turn it into zero. There's a pyramid scheme for you. What kind of person builds that kind of pyramid? It's ridiculous. Mr. Diaz and Mr. Orange and the Arnstein people plotted to take advantage of these people who had a lot of money, but apparently not a great deal of common sense when it came to some of these things. But the fact of the matter is the complaint as it's drafted and the record as we have it, make it clear that the litigation privilege should not have applied and Judge Moore should not have entered sanctions the way he did. And as a matter of fact, if you take a look at the docket, it took forever even to be able to take this appeal because the chief judge took a year and a half to deal with a motion for, you know, for a motion for a default, which blocked us from being able to take an appeal. We took one appeal and your honors properly sent it back down again. And we had to simply wait for him to get around to do that when it should have been done some point in time earlier. So you would have us decide this case on the assumption that the litigation privilege does apply if it applies under the facts and circumstances to a foreign jurisdiction the same as it applies to a domestic jurisdiction. No, I would think that your honors respectfully would refer that matter to the Florida Supreme Court. I don't mean it's up to you. I mean, the court is in a position to do whatever it wants to do, but unless it feels that it has a clear indication from existing Florida precedent as to what the Florida Supreme Court would say about that, I, you know, you're asking me what I would do. I'd flip it over there. Thank you. Thank you. Thank you. Your honors. Thank you. Counsel.